# Fidelity & Columbia Trust Company v. Harkleroad, et al.

(Decided January 13, 1928.)

(Rehearing Denied, with Modification, May 4, 1928.)

## Appeal from Laurel Circuit Court

1. Appeal and Error.—Where beneficiary, under a trust created by will sued the trustee to have the property released from the trust and turned over to such beneficiary, and the court so ordered, whereupon the trustee complied with the enforced order and settled with the beneficiary, held that such settlement did not, under Civil Code of Practice, sec. 747, render the question, as to the construction of the will creating the trust a moot question, so as to preclude trustee's appeal.

2. Wills.—In the construction of wills, the testator's intention as gathered from the language of the entire will must prevail; the question being not what did the testator intend to say? but what is meant by what he did say?

3. Wills.—Language of a will creating life estates and giving the remainder to trustee named therein held clear and unambiguous.

so as to preclude the use of extraneous evidence in will's construc-
tion.

4. Wills.—Where a will providing that the use of all testatrix's
personal property should go to her niece and grandniece during
their lives, and the remainder thereof was given by a subsequent
clause to one W., held, that the will created an absolute vested
fee in remainder in said W. of such property as was not consumed
in supporting the neice and grandniece pursuant to terms of will.

5. Wills.—Where will bequeathed use of all personal property to life
tenants, with provisions for encroachment on corpus, if necessary
for support, held, that such right of encroachment extended to all
personalty bequeathed, even though testatrix specifically men-
tioned her bank stock, and directed that it be not sold unless it
became necessary to do so for the comfortable support of the life
tenants.

6. Wills.—Life tenants, who by will were given right to encroach
for necessary support on the corpus of the personality bequeathed,
held required, in absence of express provision otherwise, to ob-
tain the court's advice relative to any such encroachment and
appropriation, and as to the amount thereof.

TRABUE, DOOLAN, HELM & HELM for appellant.

WILLIAM LEWIS and H. C. FAULKNER for appellees.

Opinion of the Court by Judge Thomas—Revers-
ing.

On February 11, 1899, Elizabeth P. Bryon duly exe-
cuted her last will and testament. About five years there-
after she died a resident of Laurel county, and the will
was duly probated in the county court of that county. Its
second, third, and fourth clauses are in these words:

"Second: I will and bequeath the use and rents
of all my real estate to Anner Jonas and Augustus
Jonas.

"Third: I will and bequeath the use of all my
personal property in Anner Jonas and Augustus
Jonas, during their natural lives, but direct that my
bank stock be not sold or any part of it unless it be-
comes necessary to do, to support and keep com-
fortable Anner Jonas, and Augustus Jonas, or in
the judgment of my executor it be best to dispose of
it. It is further my will that Anner Jonas never be
permitted to handle any money but that she be pro-
vided for comfortable (probably support) a good
home and plenty to eat and wear during her natural
life.

"Fourth: After the death of Anner Jonas and Augusta Jonas, I will and bequeath all my property real, personal and mixed of every kind and description to Hon. John D. White of Clay county, Kentucky, and by these presents appoint said John D. White of Clay county, Kentucky my executor of this last will and testament without the execution of any bond."

Anner Jonas, the devisee mentioned in the will, was a niece of the testatrix, and the other devisee, Augusta Jonas, was her daughter and a greatniece of the testatrix and she afterwards married and is the appellee and plaintiff below, Augusta Harkleroad.   John D. White, the devisee in remainder and the nominated executor of the will by its fourth clause, supra, declined to qualify, and the appellant and defendant below, Fidelity & Columbia Trust Company, of Louisville, Ky., was appointed executor with the will annexed and trustee of the trust created by the will.   It qualified in both fiduciary capacities and continued to so act until the filing of this equity action by plaintiff against it in the Laurel circuit court on August 29, 1922.   In her petition she averred the above facts and also alleged that John D. White died intestate on January 5, 1920, and left surviving him as his only heirs and distributees his widow, the defendant and appellee, Mrs. Alice White, and one daughter, the defendant, Mrs. Mae White Peterson, and that plaintiff's mother, the devisee, Anner Jonas, died intestate, and that plaintiff was her only surviving heir or distributee and inherited from her whatever interest she took under the will of the testatrix.   She then alleged that by the will, which she claimed was ambiguous in its language, it was the intention of the testatrix to and that she did devise all of the property included in its clauses supra, absolutely and in fee simple to plaintiff and her mother, and she prayed for judgment so construing the will, and that what she claimed was the *alleged* trust created by the will be terminated, and that defendant as trustee and executor with the will annexed be required to settle with and pay over to her all of the estate of the testatrix in its hands as such.   Defendants denied that such interpretation of the will was the correct one, or that testatrix so intended by the language she employed therein.   The court allowed much extraneous testimony to be taken and considered in arriving at the intention of testatrix and the proper construction of the will and on

final submission, and, in reliance on such testimony, the construction contended for by plaintiff was upheld, and the trustee was ordered to make settlement with the plaintiff as prayed for in her petition. The order and judgment was afterwards enforced by rule issued against the trustee, but it, in making such settlement, retained what it estimated as its due compensation, plus the amount of a reasonable attorney's fee for representing it in this cause, and other items of cost that it had paid. Later another rule was issued against it to turn over to plaintiff the total amount in its hands as trustee without taking credit by any sum whatever for any purpose. Thereupon the trustee filed copy of judgment with the clerk of this court, within the time allowed by the Code provisions for the purpose, and prayed for and obtained an appeal therefrom.

During the progress of the cause, Mrs. Mae White Peterson died intestate, and leaving her mother, the defendant, Mrs. Alice White, who is yet living, her sole heir and distributee; so that, Mrs. Alice White is now vested with the absolute title to whatever interest John D. White took under the will of the testatrix. In the course of this opinion we will refer to the appellant and trustee as defendant, and to the appellee Mrs. Augusta Harkleroad as plaintiff.

Plaintiff's counsel has moved this court to dismiss the appeal because defendant made settlement with her under the enforced orders of the court and which they claim renders the question here involved moot, and therefore not entertainable by this court; but we cannot agree therewith. Section 747 of the Civil Code of Practice permits an appeal without superseding the judgment. In the case of Pryor v. Mizner, 79 Ky. 232, the defendant against whom judgment was rendered paid it and prosecuted an appeal therefrom. The motion to dismiss the appeal was overruled by this court upon the ground that the satisfaction of the judgment did not bar defendant's right to appeal therefrom, since he was not compelled to supersede it, and, if he did not do so, he could be compelled to satisfy it and thereby incur additional costs; We have examined the cases of Potter v. Yonts, 172 Ky. 130, 188 S. W. 1059, Bunning v. Commonwealth, 177 Ky. 155, 197 S. W. 542, Wheeler v. Patrick, 192 Ky. 362, 233 S. W. 747, Id., 192 Ky. 529, 233 S. W. 1054, and others relied on by counsel as sustaining their motion to dismiss and find that none of them applies to the facts of this

case. In each of them the entire relief sought by the action was obtained without any available remedy to restore the status quo, and the question involved thereby became absolutely moot. In this case, however, the enforced satisfaction of the judgment may be corrected on a return of this case and the legal status of the parties be restored by proper orders of the court. A trustee is under bond to carry out the trust according to its terms, and, if by an erroneous judgment it is required to involuntarily perform any particular act in violation of the trust, we know of no rule of practice or process of reasoning by which it would be deprived of a review of such judgment when it is given the right to such review without superseding the erroneous order or judgment. We therefore conclude that the motion to dismiss the appeal should be and it is overruled.

Coming now to the merits of the case: The universal rule, as adopted and administered by this court, is, that, in the construction of wills the intention of the testator as gathered from the language of the entire will must prevail. That rule has been so often and so emphatically stated and applied in numerous opinions of this court that we deem it unnecessary to support it by reference to cases. With, perhaps, equal unanimity, we have also held that the intention that will be administered under the stated rule is the one to be gathered from the language and words of the entire will and not the one to be gathered from extraneous facts to establish what the testator intended to but did not say. In other words, in ascertaining the testator's intention, the real question is not: What did the testator intend to say, but what he meant by what he did say? Wickersham v. Wickersham, 174 Ky. 604, 192 S. W. 688; Duncan v. Duncan, 175 Ky., 253, 194 S. W. 328; Prather v. Watson, 187 Ky. 709, 220 S. W. 532; Wright v. Singleton, 190 Ky. 657, 228 S. W. 38; Penick v. Lewis, 194 Ky. 231, 238 S. W. 745; Jones v. Jones' Ex'rs. 198 Ky. 756, 250 S. W. 92; Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645; Muir v. Richardson, 201 Ky. 357, 256 S. W. 727; Weedon v. Power, 202 Ky. 542, 260 S. W. 385; Marshall v. Kent, 210 Ky. 654, 276 S. W. 563, and Walton v. Jones, 216 Ky. 289, 287 S. W. 710. In a number of cases, together with that of Shirley v. Graham, 201 Ky. 339, 256 S. W. 718, it was held, in harmony with the universal rule upon the subject, that extraneous evidence is not admissible in proceedings for the construction of wills where the language

is plain and unambiguous, and the intention thereby expressed is likewise so.

Under the law as thus established, we are clearly convinced that the court was without authority to hear parol testimony in explanation or elucidation of the intention of the testatrix in this case, since the language employed by her in her will, as contained in its clauses, supra, and which are the only ones involved, is clear and without ambiguity or confusion whatever. The second clause bequeathed to plaintiff and her mother the use and rents of the real estate of testatrix, and which, perhaps, standing alone and without modification by other parts and portions of the will, might have been sufficient to vest them with the fee to such real estate; but in the fourth clause the testatrix expressly provided that, after the death of plaintiff and her mother, "all my property real, personal and mixed of every kind and description" should go to John D. White." That created an absolute vested fee in remainder in him, and which, as and in the manner we have hereinbefore pointed out, is now vested in his widow, Mrs. Alice White, and the title was in that condition at the time the judgment was rendered.

The third inserted clause of the will expressly bequeathed to plaintiff and her mother, "the use of all my personal property . . . during their natural lives," and the remainder thereto was given by the fourth clause to Hon. John D. White. The language of the will could scarcely be rendered more definite or certain.

The record, however, presents the further questions: (a) Whether the remainder interest in the personalty devised to John D. White by the will of the testatrix attached absolutely to the whole of the corpus of the property, or only to so much of it as was not consumed by plaintiff and her mother in supporting and keeping them comfortable during the existence of their respective life estates, and (b) if they were given the right to encroach on the corpus for such purpose, did that right extend to all of the property devised by the will, or only to portions of it, and, if so, to what portion or portions? Those questions are also to be answered from an interpretation of the language of the will. The only clause in it bearing on that question is the third one, and it clearly appears from its language that it was the intention and purpose of the testatrix to provide for a comfortable support of

both of the life tenants, and that they should be provided with "plenty to eat and wear during her (their) natural life." We have parenthetically inserted in that excerpt from the third clause of the will the plural possessive pronoun "their," although as used in the will the testatrix limited the language to plaintiff's mother alone; but such reference, coupled with prior language in the clause, clearly demonstrates that it was the intention of testatrix to make the same provisions with reference to plaintiff as was done for her mother. The only reason why the inserted language was specifically confined to plaintiff's mother was because it withheld from her the right to personally handle the fund with which she was to be supported and provided for, and the testatrix thereby directed that whoever made advancements for her benefit should not refuse to provide for her the specified comforts and necessities. She did not inhibit in her will the payment of the necessary funds for that purpose directly to plaintiff, and with which she could provide for herself such necessities.

In the cases of Clore v. Clore, 184 Ky. 83, 211 S. W. 208; Kincaid v. Bell, 205 Ky. 487, 266 S. W. 44; Garriott v. Garriott, 208 Ky. 94, 270 S. W. 484, and Louisville Baptist Orphans' Home v. Igleheart, 223 Ky. 702, 4 S. W. (2d) 693, decided March 23, 1928, we had before us the question as to the extent of interests that the life tenant took under the involved wills in the devised property; i. e., whether only the use and income of and from it during his life, or whether under the language of the particular will he had the right to encroach upon the corpus of the property for necessary maintenance and support. It was held in each of them that the language of the testator clearly evinced an intention and purpose that such encroachments for the purposes stated might be made by the life tenant. While the language of the will now under consideration is not identical with that of any of those in the cited cases, still the same intention and purpose on the part of Mrs. Byron is as plainly apparent from the language of the third clause of her will. She therein directed that one item of her personal property (the bank stock) should be sold for the purpose of furnishing comfortable support to both plaintiff and her mother, if it became necessary to do so. If they were not allowed to consume any of the corpus of the proceeds of the bank stock, then it would have been futile to provide for its sale, and as to that item of property it is undoubtedly

true that the life tenants were given the right to consume the entire fund if necessary for their comfortable support. But we do not think it was the intention of the testator to confine such right to the bank stock alone. She specifically mentioned it only for the purpose of directing her administrator to preserve until the last that particular investment, and until the above necessity of carrying out her intention should imperatively arise, and we are convinced from the entire language contained in that clause of her will that she intended for such encroachments to be made on all of the property dealt with therein, which was her personal property.

The next and final question is: Whether the appropriation of the corpus of the personal property devised by the third clause of the will may be made by plaintiff herself, or must she obtain the advice of the court for that purpose, and its judgment as to the amount of such appropriation? The Ingleheart case specifically pointed out that, unless the life tenant was given the power and authority in the will to make such appropriations, then the advice of the court should be obtained. No such express power is contained in the clause of the will here under consideration, and plaintiff properly sought the advice and judgment of the court upon the question in the alternative prayer of her petition; i. e., if it should be adjudged that she was not given the absolute title to the personal property, she then asked for a decree adjudging her right to consume the necessary amount of the corpus of the property for her comfortable maintenance, and alleged facts showing such necessity. The proof in the cause sustained her averment as to the necessity for such appropriation, but it is conflicting as to the amount she should so receive.

After a careful review of the testimony and all of the facts developed therein, we have concluded that the administrator and trustee should pay her $75 per month, including the net income derived by it from the property. According to the testimony, plaintiff has been receiving from $20 to $25 per month from the income alone, and our conclusion is that such amount should be supplemented by encroaching upon the corpus of the personal property by a sufficient amount to make $75 per month.

Wherefore the judgment is reversed, with directions to set it aside and to enter one in conformity with this opinion.