## Kincaid, et al. v. Bell, et al.

(Decided November 11, 1924.)

### Appeal from Owen Circuit Court.

1. Wills—Widow Held Given Life Estate with Power to Consume Principal if Necessary, but Not to Sell Land Without Court's Order.—Will leaving property to widow as long as she should live or remain unmarried, whatever remained to be divided between testator's heirs on her remarriage or death, held to give widow life estate with right to consume principal if necessary, but without right to convey land without order of court.

2. Life Estates—Life Tenant with Right to Consume Corpus if Necessary Cannot Sell Land Without Order of Court.—Where will does not expressly give life tenant power to sell land, though she has right to consume corpus if necessary, sale of land by her without order of court is ineffective.

J. C. VALLANDINGHAM for appellants.

JOHN L. VEST and CAMMACK & BAKER for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

R. N. Hampton died intestate in the year 1879, leaving a widow, three sons and two daughters surviving him. His estate consisted of ninety acres of land and a small amount of personalty, including a life insurance policy. The value of these items is not disclosed in the record. After providing for the payment of debts and some specific devises, the will further provides:

"I want the insurance money on my life used to pay off the mortgage on the farm and my just debts, and the remainder, if any, to my wife, Mary C. Hampton. Likewise all the remainder of my prop-

erty, the farm included, as long as she remains my widow if that is the remainder of her natural life, and at her death or remarriage, whatever of my property, real or personal, remains to be equally divided between my lawful heirs.''

The widow remained on the land until the year 1909, when she conveyed it to one of her children, T. S. Hampton, in consideration of support and maintenance for the remainder of her life. He was unable to carry out this provision and in 1910 the widow's life estate was sold under an order of court and purchased by a daughter, Nannie, who in the meantime had purchased the interests of two of the sons, including that of T. S. Hampton, and after that the widow lived with this daughter until her death in 1917.

In the year 1890 the remainder interest of the third son was sold under execution and a conveyance thereto made by the sheriff to the purchaser and by mesne conveyances has reached the appellees in this case. Subsequent to 1890, the second daughter died single and intestate, and the son last named has since conveyed all his interest in the estate to Nannie, so that by purchase she is the owner of four-fifths of the land, if the will devised her mother a life estate only, but the owner of the entire estate if that instrument empowered the mother to dispose of it.

This suit was brought by appellees for division of the land in question and a conveyance to them of a one-fifth interest therein, and an accounting for the rents and profits accruing subsequent to the death of Mary Hampton. Their contention was upheld and this appeal results.

It will be observed that a decision of the question turns upon the construction of the above quoted clause from R. N. Hampton's will.

The evident purpose of the testator was to provide for the support and maintenance of his wife during life or widowhood. From the use of the words, ''the farm included,'' it is manifest that in carrying out this purpose he drew no distinction between his real and personal property. It is equally clear that he realized that the income from the estate might prove insufficient for that purpose, and intended for the corpus to be encroached upon when necessary.

The use of the words, ''at her death or remarriage whatever of my property, real or personal, remains to be equally divided,'' shows that he did not intend to devise over the entire remaining interest in his estate, but that he expected it to be reduced by his wife's use, and intended to give the remaindermen only what was left.

In a number of cases we have held that such language does not restrict the devisee to a mere life estate, but if necessary for her comfortable enjoyment, the life tenant may also consume so much of the corpus of the estate as may be necessary for her comfortable support and maintenance, leaving to the remaindermen only so much of the estate as may be left after the wants of the life tenant are satisfied.   Tr. Presbyterian Ch. v. Mize, 181 Ky. 573; Clore v. Clore, 184 Ky. 83.

However, where power to sell is not expressly given to a life tenant and no discretion is vested in him to determine when a sale is necessary for his use and enjoyment, we have held that an implied disposition and use of the corpus for the life tenant cannot be exercised except when the necessity exists, and that the life tenant may not judge of such necessity, but to enforce such provisions it is essential for him to invoke the aid of a court of equity for that purpose.

This question was carefully considered in the petition for rehearing in Clore v. Clore, *supra,* and the following conclusion reached:

''After a careful review of the clause of the will involved we are still disposed to adhere to the opinion restricting the power of appellees to sell and dispose of any of the property, and that it should not be done except for the purposes mentioned in the opinion, and not until an order of the court directing it.  The court, on a proper showing, being guided by the rights and interests of all parties upon the facts disclosed, may order either the whole or any part of the land sold for the purposes of maintaining and supporting the appellees in the manner set forth in the opinion, and may direct from time to time the amount of the proceeds which may be appropriated for that purpose by the appellees.  If the court, under facts justifying it, should conclude that it would be to the best interests of all parties to sell the whole of the property, we see nothing in the will to prevent it, and in that case the proceeds over and

above the amount adjudged to be necessary for the use of appellees could be taken charge of by a trustee and invested as the court directs, with authority in the trustee to advance to appellees out of the fund from time to time such sums as their necessities require. Such proceedings may be taken in this case upon proper pleadings being filed after it is returned to the court below.''

The rule in that case is a safe one to follow. It protects the rights of all parties; it enables a life tenant to enjoy the fruits of the testator's bounty, without endangering the estate by the indiscreet acts of one who may prove thoughtless and profligate, and thus preserves to the remainderman what is rightfully his.

Here the will gave no express power of disposition, it fixed no discretion in the life tenant, and the power of disposition may only be implied from the language used, and under the above authority it was for the court to determine whether the necessity of sale existed. It follows that under the will of Richard Hampton, his widow was not given the power of dispostion of the land in question, and her attempted exercise of such power was unauthorized, and the deed executed by her did not affect the remainder interest, and that the appellees have manifested a right to the land claimed by them.

Such being the opinion of the chancellor, the judgment is affirmed.